UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA T. PEREZ and ENRIQUE C. PEREZ,<br><br>Plaintiffs,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and U.S. BANK, NATIONAL ASSOCIATION as Trustee for the LEHMAN XS TRUST 2006-14N MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-14N,<br><br>Defendants. | No. 2:17-cv-01790-TLN-EFB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court pursuant to Defendant Mortgage Electronic Registration Systems, Inc.'s ("MERS") and Defendant U.S. Bank, National Association's ("U.S. Bank") (collectively, "Defendants") Motion to Dismiss Complaint. (ECF No. 3.) Plaintiffs Bella T. Perez and Enrique C. Perez (collectively, "Plaintiffs") oppose the motion. (ECF No. 8.) After carefully considering the parties' briefing, the Court hereby GRANTS Defendants' Motion to Dismiss (ECF No. 3) WITHOUT LEAVE TO AMEND.

/ / /

/ / /

/ / /

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege in the Complaint that they own residential property in West Sacramento, California ("Property" or "Subject Property"). (ECF No. 1-1 at ¶ 1.) Defendant MERS is a subscription-based service which tracks ownership interests and servicing rights in mortgage loans and holds title to mortgages as a nominee for subscriber banks. (ECF No. 1-1 at ¶ 2.) Defendant U.S. Bank is a banking subsidiary of U.S. Bancorp. (ECF No. 1-1 at ¶ 3.)

On June 16, 2006, Plaintiffs executed an MTA-indexed adjustable rate mortgage with a 110% Negative Amortization feature regarding the Subject Property which contains an Adjustable Rate Note ("Note") and Deed of Trust ("DOT") with an adjustable rate rider. (ECF No. 1-1 at ¶ 6.) The DOT identifies Dollar Mortgage Corporation ("Dollar") as the lender, Defendant MERS as the nominal beneficiary, and Placer Title Company as the trustee. (ECF No. 1-1 at ¶ 6.) Plaintiffs allege that Dollar acted as table lender for wholesale table funder IndyMac Bank ("IndyMac"), who arranged prefunding of the loan with a short-term credit line. (ECF No. 1-1 at ¶ 7.)

Plaintiffs allege a series of four "true sales" of the mortgage loan, as follows, the first being Dollar's sale to IndyMac. (ECF No. 1-1 at ¶ 16.) On September 1, 2005, IndyMac allegedly sold the mortgage loan to Lehman Capital ("Lehman"), Sponsor and Seller in a securitization transaction identified as the Lehman XS Trust 2006-14N Mortgage Pass-through Certificates, Series 2006-14N ("Lehman XS Trust 2006-14N"). (ECF No. 1-1 at ¶ 9.) On an unspecified date, Lehman allegedly sold Plaintiffs' loan to Structured Asset Securities Corporation ("SASC") as Depositor. (ECF No. 1-1 at ¶ 9.) Plaintiffs allege that SASC then sold the mortgage loan to Defendant U.S. Bank, trustee for Lehman XS Trust 2006-14N, on August 1, 2006, ahead of the August 31, 2006 closing date of the trust. (ECF No. 1-1 at ¶ 9.) Plaintiffs allege each of the foregoing sales occurred without a required intervening assignment of their DOT and endorsement of the Note. (ECF No. 1-1 at ¶ 17.) Plaintiffs allege the sales, thus, violated the governing trust document and show that U.S. Bank never received effective assignment of any interest in Plaintiffs' loan during the securitization process. (ECF No. 1-1 at ¶ 17.)

1    Plaintiffs then allege that on June 18, 2009, MERS held itself out as nominee for Dollar

2    and assigned the beneficial interest in Plaintiffs' DOT to OneWest Bank, which was recorded on

3    September 25, 2009 ("Assignment 1"). (ECF No. 1-1 at ¶ 19.) Plaintiffs allege that Assignment

4    1 is "fatally defective, null and void" and amounts to an ineffective assignment because (1) the

5    sale of Plaintiffs' loan by Lehman to SASC in 2006 extinguished all interest Dollar and MERS

6    held in the loan and ended MERS's agency relationship with Dollar because SASC does not

7    subscribe to the MERS registry; (2) under the governing trust documents, only the Depositor —

8    namely, SASC — is permitted to assign the mortgage loan to U.S. Bank in its capacity as trustee

9    for the securities trust; and (3) the assignment from MERS to OneWest Bank took place beyond

10   the time permitted under the trust documents, which "require the assignment from August 31,

11   2006 or, in limited circumstances, 90 days thereafter." (ECF No. 1-1 at 9 ¶ 19.) Plaintiffs allege

12   MERS cannot establish an agency relationship with U.S. Bank because U.S. Bank is not a

13   successor or assign of Dollar. (ECF No. 1-1 at ¶ 11.)

14       Based on the assertions that Assignment 1, executed in 2009, was null and void, Plaintiffs

15   allege that a series of subsequent transactions are also null and void, including: (1) a Substitution

16   of Trustee by OneWest Bank, substituting MTDS, Inc. for original trustee Placer Title Company,

17   executed on June 18, 2009 and recorded on September 25, 2009 ("SOT 1"); (2) a Notice of

18   Trustee's Sale issued against Plaintiffs' Property by MTDS, Inc. on September 23, 2009

19   (although the scheduled sale did not take place); (3) an assignment of the beneficial interest in

20   Plaintiffs' DOT by OneWest Bank to U.S. Bank, executed on July 20, 2011 and recorded on

21   August 3, 2011 ("Assignment 2"); (4) a second assignment by Ocwen, as attorney-in-fact for

22   OneWest Bank, to U.S. Bank as trustee for the Lehman XS Trust 2006-14N, executed on May 19,

23   2015 and recorded on June 2, 2015 ("Assignment 3"); and (5) a Substitution of Trustee by

24   Ocwen, as servicer for U.S. Bank as trustee for the Lehman XS Trust 2006-14N, substituting

25   Western Progressive Trustee, LLC as the foreclosing trustee under the DOT, executed on June 26,

26   2015 and recorded on July 10, 2015 ("SOT 2"). (ECF No. 1-1 at ¶¶ 21–25.) Notably, Plaintiffs

27   do not challenge as null and void a Notice of Default issued against them on June 18, 2009 by

28

3

Service Link, as agent for MTDS, Inc., as agent for Dollar, recorded on June 22, 2009, and rescinded by Western Progressive on August 26, 2015. (ECF No. 1-1 at ¶¶ 18 & 26.)

Based on the foregoing allegations, Plaintiffs assert claims for declaratory relief and cancellation of instruments as to U.S. Bank and MERS, and quiet title as to U.S. Bank only. (ECF No. 1-1 at 4.) Defendants move to dismiss the entire Complaint. (ECF No. 3.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove

facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

*Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680.

While the plausibility requirement is not akin to a probability requirement, it demands more than

"a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is

"a context–specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

*see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

denying leave to amend when amendment would be futile). Although a district court should

freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

deny such leave is 'particularly broad' where the plaintiff has previously amended its

complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III.** **ANALYSIS**

Defendants move to dismiss the Complaint on grounds that Plaintiffs fail to state a claim

for declaratory relief, quiet title, and cancellation of instruments. (ECF No. 3 at 8.) As to the

claim for declaratory relief, Defendants make several sub-arguments broadly challenging as a

matter of law, Plaintiffs' allegation that MERS's assignment of the DOT to OneWest Bank was ineffective. (ECF No. 3 at 11–16.) As to the quiet title claim, Defendants assert that Plaintiffs make contradictory allegations and that Plaintiffs cannot quiet title to property they offered as security without offering or alleging tender. (ECF No. 3 at 9.) Finally, Defendants argue that Plaintiffs' claim for cancellation of instruments is insufficient because the facts alleged do not fall within the equitable scheme permitting cancellation of instruments. (ECF No. 3 at 17–18.) The Court need only discuss two of the sub arguments of the motion as to declaratory relief — namely MERS's authority to assign the DOT to OneWest Bank and the related issue of Suchan Murray's authority as signatory — because these issues demonstrate a lack of standing and are therefore dispositive.

### A.  Declaratory Relief

#### i.  *MERS's Authority to Assign the Deed of Trust to OneWest Bank*

Plaintiffs allege in the Complaint that MERS could not assign the DOT to OneWest Bank in 2009 because Dollar Mortgage Corporation sold its loan to SASC, a non-MERS member, in 2006. (ECF No. 1-1 at ¶ 30.) Plaintiffs also allege the assignment is void because it occurred after the August 31, 2006 closing date. (ECF No. 1-1 at ¶ 19.) Defendants assert that the 2006 sale to SASC does not show the 2009 assignment to OneWest Bank was void, and that the late or defective assignment of Plaintiffs' loan to the securitized trust rendered the transfer at most voidable, not void. (ECF No. 3 at 13–14.) Defendants further assert that borrowers lack standing to challenge voidable assignments. (ECF No. 3 at 8–9.) In opposition, Plaintiffs contend the 2009 assignment to OneWest Bank is void *ab initio* because neither MERS nor any purported principal had authority to transfer the beneficial interest in the DOT. (ECF No. 8 at 9.) Plaintiffs also aver that they do not challenge the securitization of their loan or the defective assignments made during the securitization process and only review the securitization of their loan to show that U.S. Bank could not have received effective assignment of any interest in their loan under any plausible circumstances. (ECF No. 8 at 10.)

There is no shortage of authority in this district recognizing the rule from *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156 (2011), which says that a borrower

does not have standing to challenge a beneficiary's authority to initiate a foreclosure absent a specific factual basis for alleging that the wrong party has initiated foreclosure. *See Hansen v. Western Progressive, LLC*, No. 2:15–cv–01426–MCE–CKD, 2017 WL 2722014, at \*4 (E.D. Cal. June 23, 2017); *Valenzuela v. Wells Fargo Bank Nat'l Ass'n*, No. CV F 13–1620 LJO JLT, 2014 WL 309438, at \*7–8 (E.D. Cal. Jan. 28, 2014); *Nastrom v. New Century Mortg. Corp.*, No. 1:11cv01998 DLB, 2012 WL 2090145, at \*4 (E.D. Cal. June 8, 2012). Additionally, the court in *Jenkins v. JP Morgan Chase Bank, N.A.* later established a California majority rule that borrowers who are not parties to a trust agreement or other agreement governing securitization lack standing to enforce such agreements where their obligations under the promissory note remain unchanged. *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515 (2013), *disapproved on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016); *see also Gutierrez v. Bank of America, N.A.*, No. 2:14–CV–01246–TLN–AC, 2016 WL 310332, at \*6 (E.D. Cal. Jan. 26, 2016); *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1104–05 (E.D. Cal. 2014); *Madlaing v. JPMorgan Chase Bank, N.A.*, No. CV F 12–2069 LJO SMS, 2013 WL 2403379, at \*8 (E.D. Cal. May 31, 2013). In other words, a plaintiff relying on specific factual allegations of violations or deficiencies in the securitization process does not have standing to challenge a foreclosing party's authority because the plaintiff is not a party to the agreement governing the securitization. *Jenkins*, 216 Cal. App. 4th at 515 ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements . . . relating to such transactions."); *see also Hansen*, No. 2:15–cv–01426–MCE–CKD, 2017 WL 2722014, at \*5 ("Nor can Plaintiff point to an alleged violation of the PSA to confer standing on his challenge to Defendant's right to foreclose . . . . Improper securitization under a PSA does not support any such challenge under California case law.").

In their opposition, Plaintiffs attempt to distinguish their action from *Gomes* and *Jenkins*. (ECF No. 8 at 7.) Plaintiffs assert that they provide a specific factual basis involving "evidence that their loan was sold to a non-MERS member in 2006 thereby depriving MERS with authority to assign the beneficial interest in the loan to OneWest in 2009." (ECF No. 8 at 8.) Under

*Jenkins*, this is an insufficient basis to confer standing for Plaintiffs to challenge U.S. Bank's authority to foreclose on their Property. *Jenkins*, 216 Cal. App. 4th at 514–15 (holding that plaintiff did not have standing to pursue her claim for declaratory relief based on allegations that defendants lacked foreclosure authority due to violations of the pooling and servicing agreement). Although Plaintiffs insist they do not challenge the securitization of their loan, Plaintiffs rely heavily on facts arising out of the securitization process as a basis for contesting U.S. Bank's authority to initiate foreclosure. The following excerpts from the Complaint clearly demonstrate Plaintiffs' reliance on the securitization process to support their claims:

> Accordingly, Dollar and MERS, its nominee, exited the chain of title to the loan upon the sale to SASC . . . . (ECF No. 1-1 at ¶ 11.)

> The plain fact is that MERS is unable to establish an agency relationship with Defendant US Bank, the purported beneficiary of Plaintiffs' loan. Moreover, it is equally plain that the attempt to securitize Plaintiffs' loan failed. (ECF No. 1-1 at ¶ 12.)

> The Trust Agreement governing the securitization . . . provides that only the Depositor, and no other entity, is permitted to make the final assignment and transfer of each mortgage loan to the REMIC MBS trust, and the assignment must be made as of the Closing Date of the trust (August 31, 2006), or within 90 days thereafter . . . . (ECF No. 1-1 at ¶ 15.)

> The foregoing sales were made without the required intervening assignment of Plaintiffs' Deed of Trust and endorsement of the Note in contravention of the governing trust documents. Accordingly, Plaintiffs have established that U.S. Bank never received effective assignment of any interest in their mortgage loan during the securitization process. (ECF No. 1-1 at ¶ 17.)

> As Dollar and MERS, its nominal beneficiary, no longer held any interest in Plaintiffs' mortgage loan, having alienated all interest in the loan in 2006, Assignment 1 is fatally defective, null and void. It is void for the additional reasons that only the trust depositor, that is, SASC is permitted under the governing trust documents to assign the mortgage loan to US Bank in its capacity as trustee for the securities trust. Moreover, the assignment is way out of time. The trust documents require the assignment from August 31, 2006 or, in limited circumstances, 90 days thereafter. (ECF No. 1-1 at ¶ 19.)

It is clear from the face of the Complaint that Plaintiffs rely on allegations of violations of the trust agreement to assert that U.S. Bank did not receive effective assignment of any interest in their loan and lacks the power to foreclose. However, as non-parties to the trust agreement, Plaintiffs lack standing to challenge U.S. Bank's foreclosure authority. *See Jenkins*, 216 Cal. App. 4th at 515. Moreover, Plaintiffs fail to allege any change in their obligations under the Note that supports the presence of an actual controversy between Plaintiffs and Defendants. *See id*. Plaintiffs cite to a series of cases in an attempt to support their assertion that their case is distinguishable from *Gomes* and *Jenkins* in that Plaintiffs have standing to bring suit against Defendants. (ECF No. 8 at 7–8.) However, the relevant law that Plaintiffs rely on from each case applies in the context of a wrongful foreclosure where a foreclosure sale has already taken place and deprived a borrower of his or her interest in the note. *See Subramani v. Wells Fargo Bank, N.A., et al.*, No. C 13–1605 SC, 2013 WL 5913789, at *4 (N.D. Cal. Oct. 31, 2013); *Cheung v. Wells Fargo Bank, N.A.*, No. C 13–01756 RS, 987 F. Supp. 2d 972, 978-79 (N.D. Cal. 2013); *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 974 (N.D. Cal. 2012); *Robinson v. Countrywide Home Loans, Inc.*, 199 Cal. App. 4th 42, 47 n.5 (2011) (noting that the borrower can seek to enjoin or set aside a trustee's *sale*, as distinguished from initiation of foreclosure claims which are subject to dismissal). Like in *Robinson*, Plaintiffs here filed a pre-foreclosure suit to stop a party from initiating foreclosure.

Additionally, Plaintiffs attempt to distinguish between challenging the securitization process itself and reviewing defects in the securitization process in order to challenge the validity of the assignment to U.S. Bank. (ECF No. 8 at 10.) However, the court in *Reyes-Aguilar v. Bank of America, N.A.*, No. 13–cv–05764–JCS, 2014 WL 2153792, at *4 (N.D. Cal. Mar. 20, 2014), rejected a similar argument because the plaintiffs' claims relied solely on irregularities in the securitization process that allegedly violate a governing trust document. The court held that "[plaintiffs] do not have standing to enforce the PSA, nor do they have standing to challenge the Assignment . . . on the basis of a violation of the PSA." *Id.*

1    Plaintiffs' claim depends on allegations that irregularities in the securitization process

2    violate the trust agreement, and Plaintiffs therefore lack standing to challenge MERS's

3    assignment to OneWest Bank.

4                    *ii.    Allegation that Suchan Murray was an Unauthorized Signatory*

5        As an alternative challenge to the validity of the 2009 assignment, Plaintiffs assert that

6    Suchan Murray falsely represented herself to be an authorized signatory for MERS and that Ms.

7    Murray's signature appears to be forged, making the assignment void *ab initio*.[1]  (ECF No. 1-1 at

8    ¶ 20.)  Defendants challenge Plaintiffs' assertion that Ms. Murray was not authorized to sign on

9    behalf of MERS as a "logical fallacy" and an act that is, at most, voidable because an

10   unauthorized signature can be ratified by a principal.  (ECF No. 3 at 15.)  Defendants re-assert

11   that borrowers lack standing to challenge assignments that are merely voidable.  (ECF No. 3 at

12   15.)  Plaintiffs reassert in their opposition that Ms. Murray's allegedly unauthorized signature

13   rendered the assignment void *ab initio*.  (ECF No. 8 at 10.)

14       The California Court of Appeal rejected an argument similar to Plaintiffs' in *Saterbak v.

15   JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 814 (2016), holding that the plaintiff lacked

16   standing to challenge the assignment on the theory that the signatory forged or robo-signed the

17   assignment document.  The court held that the suit was preemptive because the plaintiff's

18   challenge to the defendant's ability to foreclose was asserted pre-foreclosure.  *Id.* at 815.  Like the

19   *Saterbak* plaintiff, Plaintiffs here bring their action pre-foreclosure and thus lack standing to

20   pursue their claims at this early juncture.  Importantly, even if Plaintiffs brought the action post-

21   foreclosure and asserted a claim under this theory, courts have determined that defects in

22   assignment documents involving unauthorized signatories only render the assignment voidable,

23   not void, and that plaintiffs do not have standing to challenge voidable assignments.  *Kaurloto v.

24   U.S. Bank, N.A., et al.*, No. 16-cv-06652-JFW-GJSx, 2016 WL 6808117, at *5 (C.D. Cal. Nov.

25   17, 2016) ("To the extent that an assignment was in fact robo-signed, it would be voidable, not

26

27   _____
     [1]      Plaintiffs also allege that because there was a delay between the execution and notarization of the
     assignment, it is likely that Ms. Murray did not personally appear before the notary. (ECF No. 1-1 at ¶ 20.)  Aside
28   from the fact that this argument makes little sense, it is too conclusory to pass muster under *Twombly* and *Iqbal*.  The
     Court declines to rule on this allegation.

void, at the injured party's option — the injured party would be the assignee . . . , not Plaintiff . . . . Therefore, robo-signing allegations do not give the Plaintiff standing to challenge the MERS assignment."); *Reed v. Wilmington Trust, N.A.*, No. 16-cv-01933-JSW, 2016 WL 3124611, at \*5 (N.D. Cal. June 3, 2016) ("[T]he alleged defect [of robo-signing] would only render the assignment voidable, rather than void.").

For the foregoing reasons, this Court finds that Plaintiffs lack standing to bring a claim for declaratory relief challenging a signatory's authority to make an assignment on the theory that the signatory forged or robo-signed. Accordingly, Plaintiffs' claim for declaratory relief is dismissed for lack of standing.

### B. Quiet Title and Cancellation of Instruments

Plaintiffs also assert claims to quiet title and for cancellation of instruments. However, these claims rely on the same facts as set forth in Plaintiffs' claim for declaratory relief. In *Flores v. GMAC Mortg., LLC*, No. C 12–794 SI, 2013 WL 2049388 (N.D. Cal. May 14, 2013), the court dismissed all claims that relied on plaintiffs' allegations of a defective assignment or substitution, including claims for declaratory relief, injunctive relief, and cancellation of instruments. After rejecting the plaintiffs' theory that MERS lacked authority to assign their deed of trust due to deficiencies in the securitization process, the court found that "[e]ven assuming . . . that there was some deficiency in MERS' assignment or substitution with respect to the deed of trust, plaintiffs do not have standing to assert any of the seven causes of action that they claim arise out of that deficiency." *Id.* at \*3. *See also Madlaing*, No. CV F 12–2069 LJO SMS, 2013 WL 2403379, at \*8 ("Defendants are correct that Mr. Madlaing lacks standing to assert PSA-based claims and the complaint's claims fail to the extent based on wrongs in connection with the PSA . . . ."). By virtue of their connection to Plaintiffs' factual allegations arising out of trust agreement violations and the securitization process, Plaintiffs' claims for quiet title and cancellation of instruments must also fail for lack of standing.

### C. Leave to Amend

Federal Rule of Civil Procedure 15 broadly advises courts that "leave shall be freely given when justice so requires." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.

2003).  In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court held that, although it is within the discretion of district courts to grant or deny leave to amend, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of discretion . . . ."  District courts are further instructed that:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182; s*ee also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015); *In re Tracht Gut, LLC*, 836 F.3d 1146, 1151–52 (9th Cir. 2016).

"A proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Thompson v. JPMorgan Chase Bank, N.A.*, No. 16-cv-06134-BLF, 2017 WL 897440, at *8 (N.D. Cal. Mar. 7, 2017) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)) (internal quotation marks and brackets omitted).  "The Ninth Circuit has alternatively stated that the test of whether amendment would be futile is 'identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6).'" *Id.* (quoting *Miller*, 845 F.2d at 214). In *Thompson*, the plaintiff sought injunctive relief for a wrongful foreclosure that had not yet occurred, alleging that the defendants lacked authority to institute foreclosure proceedings against her property because an assignment of the deed of trust was invalidly executed by an unauthorized signatory.  *Thompson*, No. 16-cv-06134-BLF, 2017 WL 897440, at *1–2.  The court dismissed the complaint as preemptive and denied leave to amend on futility grounds, stating:

> [Plaintiff]'s theory relating to assignments of DOT is not sound and without a proper basis in statutes or case law . . . . [Plaintiff] has also provided no other facts or alternative legal theory other than her theory of erroneous assignment of DOT.  Since [plaintiff] has given no indication of any factual or legal basis to render her claims viable, the Court DISMISSES the complaint with prejudice and without leave to amend.

*Id.* at 8.

/ / /

12

Here, Plaintiffs' claims are premised, in part, on an unauthorized signatory theory. As in *Thompson*, the claim fails as a matter of law for lack of standing because Plaintiffs do not allege that any foreclosure has taken place, nor can they sufficiently allege prejudice based on any misconduct or deficiency of assignment in the absence of a foreclosure. As described extensively in the foregoing analysis, the only other theory Plaintiffs rely on — namely, that MERS's assignment to OneWest Bank was ineffective because MERS violated the trust agreement — also fails as a matter of law because Plaintiffs lack standing to bring claims premised on violations of a trust agreement. Like the plaintiff in *Thompson*, Plaintiffs here have not asserted any alternative theories or facts to indicate that they have a viable claim. Based on these findings, the Court finds that Plaintiffs could not amend the Complaint in such a way that constitutes a valid and sufficient claim and it would merely be futile to permit leave to amend.

**IV.    CONCLUSION**

For the reasons stated above, the Court finds Plaintiffs have failed to state a claim as to all causes of action. The Court hereby GRANTS Defendants' Motion to Dismiss Complaint (ECF No. 3) WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated: August 2, 2018

_____
Troy L. Nunley
United States District Judge